Michael O. Hardison
EATON & VAN WINKLE LLP
3 Park Avenue
New York, New York 10016-2078
(212) 779-9910

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
KINGFISH SERVICES LIMITED,

                     Plaintiff,

- against-

HANJIN OVERSEAS TANKER PTE. LTD.,

                     Defendant.
------------------------------------------------------------x

07 Civ. 9628 (RPP)
ECF CASE

**VERIFIED COMPLAINT
IN ADMIRALTY**

Plaintiff, Kingfish Services Limited, by its attorneys, Eaton & Van Winkle LLP, for its complaint against Defendant, Hanjin Overseas Tanker Pte. Ltd., upon information and belief, alleges as follows:

## JURISDICTION

1.    This is a case of admiralty and maritime jurisdiction, 28 U.S.C. § 1333, and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and Rule B of the Supplemental Rules For Certain Admiralty And Maritime Claims.

## PARTIES

2.     At all relevant times, Plaintiff, Kingfish Services Limited, was and still is a corporation or other business entity organized and existing under the laws of a foreign country with an office and place of business located at c/o IPC (USA), Inc., Four Embacadero Center - Suite 1100, San Francisco, California 94111.

3.     At all relevant times, Defendant, Hanjin Overseas Tanker Pte. Ltd., was and still is a corporation or other business entity organized and existing under the laws of a foreign country with an office and place of business located at c/o Hanjin Shipping Singapore Office, 72 Anson Road # 120-1, Anson House, Singapore 079911.

## UNDERLYING EVENTS

4.     On or about June 20, 2007, Defendant, as Owner of the M/T PACIFIC POLARIS, entered into a maritime contract of charter party with Plaintiff, in which Defendant agreed to let and Plaintiff agreed to hire the vessel for a period of minimum 30 days - maximum 60 days at $25,000.00 per day.

5.     The charter party provided that the vessel was let for the purpose of carrying all lawful merchandise including in particular clean petroleum products unleaded undarker than 2.5 NPA, maximum 4 grades within vessel's natural segregation.

6.     The charter party also provided that the vessel was to be delivered to Plaintiff on dropping last outward sea pilot ex-dry dock Singapore/Japan range in Defendant's option and re-delivered to Defendant on dropping last outward sea pilot one safe port Singapore/Japan

range in Plaintiff's option.

7.   On or about July 31, 2007, and on subsequent occassions, the Master of the M/T PACIFIC POLARIS represented to Plaintiff that the vessel could carry grades and quantities of cargo all with double-valve segregation as follows: 50,000 BBLS GASOIL 0.2%, 130,000 BBLS GASOIL 0.5%, 20,000 BBLS MOGAS 91, and 20,000 BBLS JET FUEL.

8.   On or about August 3, 2007, Plaintiff entered into a maritime contract of charter party with PDVSA Petroleo y Gas, S.A. ("PDVSA") for the sub-charter of the M/T PACIFIC POLARIS.

9.   The sub-charter provided for two voyages, each from a port in Venezuela to a port in the Dominican Republic, with laycans of August 5-7, 2007 and August 16-18, 2007, and a lumpsum freight rate for each voyage of $295,000.00.

10.   The sub-charter also provided that, with regard to the first voyage, the vessel was to carry four grades and quantities of cargo all within the vessel's natural segregation as follows:  50,000 BBLS GASOIL 0.2%, 130,000 BBLS GASOIL 0.5%, 20,000 BBLS MOGAS 91, and 20,000 BBLS JET FUEL.

11.   The vessel, with regard to the second voyage, was to carry different quantities of the same four grades of cargo all within the vessel's natural segregation.

12.   The vessel, pursuant to the terms of the sub-charter, sailed to Punta Cardon, Venezuela, to load the cargo to be transported on the first voyage to the Dominican Republic.

13. PDVSA, at Punta Cardon, Venezuela, tendered the cargo to be transported on the first voyage but the vessel could not load all of the cargo because the vessel was unable to achieve double-valve segregation for the grades and quantities of cargo to be transported on the first voyage to the Dominican Republic.

14. On or about August 14, 2007, PDVSA advised Plaintiff that PDVSA would not be performing the second voyage to the Dominican Republic in view of the vessel's inability to achieve double-valve segregation for the grades and quantities of cargo to be transported to the Dominican Republic.

15. PDVSA also advised Plaintiff that PDVSA would not be performing the second voyage to the Dominican Republic due to the vessel's lack of communication and poor English of the Master and crew which caused PDVSA concern about having an unsafe vessel in the intended ports and gave PDVSA no alternative but to reject the vessel.

16. PDVSA further advised Plaintiff that PDVSA would not be performing Curacao-Iran/AG-Singapore voyages which were contemplated to position the vessel for redelivery in the Far East.

17. Plaintiff sought substitute employment for the vessel but was unable to arrange substitute employment.

18. Plaintiff, since the time period covered by charter party with Defendant was coming to an end, and since Plaintiff could not arrange substitute employment, was obliged to return the vessel in ballast (i.e., without cargo and earning no freight revenue) to the

redelivery range of Singapore/Japan and redeliver the vessel to Defendant at Kashima, Japan.

## CAUSE OF ACTION

19.  Paragraphs 1-18 of this Complaint are repeated and realleged as if the same were set forth here at length.

20.  Defendant breached Clause 2(a)(i) of the charter party entered into between Defendant and Plaintiff by failing to provide a full and efficient complement of master, officers and crew ... who shall be trained to operate the vessel competently and safely.

21.  Defendant breached Clause 2(a)(iv) of the charter party entered into between Defendant and Plaintiff by failing to provide sufficient personnel with a good working knowledge of the English language to enable cargo operations at loading and discharging places to be carried out efficiently and safely and to enable communications between the vessel and those loading the vessel or accepting discharge therefrom to be carried out quickly and efficiently.

22.  Defendant breached Clause 3(i) of the charter party entered into between Defendant and Plaintiff by failing throughout the charter service, whenever the passage of time, wear and tear or any event ... required steps to be taken to maintain or restore the conditions stipulated in Clauses 1 and 2(a) to exercise due diligence so to maintain or restore the vessel.

23.  Defendant breached Clause 72 of the charter party entered into between Defendant and Plaintiff by failing to provide the professional histories the Master, the Chief

Officer and the Chief Engineer upon request by Plaintiff.

24. Plaintiff has duly performed all obligations owed to Defendant under the terms of the charter party.

25. Plaintiff, by reason of the premises, has sustained damages and expects to sustain additional damages, as best as can now be estimated, in the amount of $1,243,389.43, calculated as follows: the cost of ballasting to Japan ($1,236,792.55) less the projected loss on redelivery after the intended Curacao-Iran/AG-Singapore voyages ($162,904.00) plus the value of bunkers on board the vessel on redelivery ($169,500.88).

26. The charter party provides that all disputes between the parties are to be resolved by arbitration in London pursuant to English law.

27. This action is brought to obtain jurisdiction over Defendant and to obtain security in favor of Plaintiff in respect of its claim against Defendant and in aid of London arbitration proceedings.

28. This action also is brought to obtain security for additional sums to cover Plaintiff's anticipated costs in the arbitration and interest, all of which are recoverable under English law and the rules applicable to London arbitration.

29. Upon information and belief, and after investigation, Defendant cannot be "found" within this District for the purpose of Rule B of the Supplemental Admiralty Rules for Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendant has, or will shortly have, assets within this District comprising of, inter alia, cash, funds, credits,

wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendant ("Assets"), including but not limited to Assets at, being transferred through, or being transferred and/or wired to or from various banking institutions and/or other business entities.

30   The total amount sought to be attached pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims by Plaintiff against Defendant includes: (i) principal claim in the amount of $1,243,389.43; (ii) interest, which is recoverable in London arbitration, at the rate of 7.86% compounded quarterly for three years, the estimated time it will take to obtain a final arbitration award, in the amount of $327,383.00 and (iii) estimated attorneys' fees and disbursements, together with the costs of the arbitration, including arbitrators fees, all of which are recoverable in London arbitration, in the amount of $200,000.00, for a total claim of $1,770,772.43.

### RESERVATION OF RIGHT
### TO ARBITRATE DISPUTES WITH DEFENDANT

31.   The charter party provides that any disputes between Plaintiff and Defendant are to be arbitrated in London pursuant to English law.

32.   Plaintiff expressly reserves the right to arbitrate the merits of its dispute with Defendant and brings this action solely to obtain quasi-in-rem jurisdiction and security for its damages, interest and the costs of London arbitration.

WHEREFORE, Plaintiff prays as follows;

1. That process in due form of law according to the practice of this Court may issue against Defendant;

2. That the Court, in accordance with the provisions of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, direct the issuance of Process of Maritime Attachment and Garnishment attaching all assets within the district owned by Defendant or in which Defendant has a beneficial interest up to the amount of $1,770,772.43;

3. That judgment be entered against Defendant and in favor of Plaintiff in the amount of $1,770,772.43, plus interest, costs, and attorneys' fees; and

4. That the Court grant such other, further and different relief as may be just, proper and equitable in the premises.

Dated: New York, New York
      October 30, 2007

EATON & VAN WINKLE LLP

By:   /s/ Michael O. Hardison
       Michael O. Hardison

3 Park Avenue
New York, New York 10016-2078
(212) 779-9910

Attorneys for Plaintiff

## **VERIFICATION**

MICHAEL O. HARDISON, Esq., pursuant to the provisions of 28 U.S.C. § 1746, declares and states as follows:

1. I am a member of the firm of Eaton & Van Winkle LLP, attorneys for Plaintiff, and I make this verification on behalf of Plaintiff.

2. I have read the foregoing complaint and know the contents thereof and the same are true to the best of my knowledge, information and belief. The sources of my information and the grounds for my belief are communications received from the Plaintiff and the London solicitors for Plaintiff and an examination of the papers relating to the matters in suit.

3. The reason this verification is made by the undersigned, and not made by Plaintiff, is that Plaintiff is a foreign corporation or other business entity, no officer or director of which is presently within this district.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
        October 30, 2007

                                                    /s/ Michael O. Hardison
                                                    Michael O. Hardison

## **DECLARATION**

MICHAEL O. HARDISON, Esq., pursuant to the provisions of 28 U.S.C. § 1746, declares and states as follows:

1. I am a member of the firm of Eaton & Van Winkle LLP, attorneys for plaintiff, and I am familiar with the facts of this matter.

2. I execute this declaration in compliance with the provisions of Rule B(1) of the Supplemental Rules of Certain Admiralty and Maritime Claims.

3. To the best of my information and belief, Defendant, Hanjin Overseas Tanker Pte. Ltd., cannot be found within this District as defined by the relevant State and Federal Rules of Civil Procedure.

4. I caused a search to be made by going to the New York State Department of State website (www.dos.state.ny.us) and searching the Corporation and Business Entity Database. This database contained no record of Defendant being either a New York corporation or a foreign corporation licensed to do business in New York.

5. I also checked the internet telephone directories for New York state and contacted the telephone information operator regarding a listing for Defendant. None of these sources contained a listing for Defendant.

6.  I am unaware of any general or managing agents within this District for Defendant.

7.  It is for the foregoing reasons that I request, on behalf of Plaintiff, that the Court execute the accompanying Order For Issuance of Process of Maritime Attachment and Garnishment.

I declare under the penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
October 30, 2007

/s/ Michael O. Hardison
Michael O. Hardison